Hemphill, Cli. J.
The judgment is charged to be erroneous on the grounds—
That the statute of limitations did not commence to run in favor of the defendant until his immigration to the Republic; and,
That the amendment consists of two distinct allegations, the first of which is in the words of the twenty-second section of the statute of limitations, and clearly takes the case out of the operation of the statute, and brings it within the exception of the section; and,
Were the second allegation of the amendment admitted to be insufficient to support the action, yet the matter contained in the petition and other allegations is sufficient for that purpose.
This last position is untenable. If the first allegation be sufficient, and the second the reverse, yet they are not divisible in their nature, so that on demurrer to tile whole pleading judgment should be given for the plaintiff. The fact of the defendant not being in the country before the 1st of January, 1845, being averred, qualifies all otiier allegations in relation to his absence from or presence in the Republic; and the demurrer admits the facts as alleged, only with this modification.
The question for decision is whether the cause of action is excepted from the operation of the general limitation of the statute until the defendant’s removal to the country; and its solution depends on the true construction of the twenty-second section, which is expressed in the following terms :
“That if any person against whom there is or shall be cause of action is or shall be without the limits of this Republic at the time of the accruing of such action, or at any time during which the same might have been maintained, then the person entitled to such action shall be at liberty to bring the same against such person or persons after his or their return to the Republic; and the time of such person’s absence shall not be accounted or taken as a part of the time limited by this act.”
It is urged that the exception operates as well against persons coming from abroad or removing to the country as against citizens or residents going abroad and returning after a temporary absence; and several authorities are cited in which similar provisions in the statutes of other States and nations have received this construction. I shall not attempt an .exploration of the jurisprudence of foreign nations or States to ascertain the points of resemblance or difference between the section and provisions to be found in their legislation. That such interpretation of provisions nearly similar has been sanctioned by English and American courts is unquestionable; and as reasoning, it commends itself by all the considerations derived from the general approbation of those pure, enlightened, and august tribunals. But their expositions have not the conclusive force of authority. At the passage of this statute Texas was an independent nation, possessing and exercising the plenary powers of sovereignty. She was subject to no laws except those emanating from her own Legislature, nor to the constructions of any courts other than her own domestic tribunals. Among her other attributes of sover-eigntj', she still has authority to prescribe the times at which suits shall be brought and actions barred within her own territory; and her laws for that purpose can receive their authoritative interpretation from her own courts alone. Tiie accidental circumstance that the terms of the section in question may be similar to the provisions of foreign laws is immaterial. Many of our statutory regulations are similar to those found in the codes of other countries. Some of them are derived from the common law; others from the civil-law system of jurisprudence. The expositions of many of these have been variant in different countries, and perhaps fiuctuating in each of them; and at all events they can furnish no rule of action, except in the territorial limits of the State where they are made; for it cannot be pretended that the exposition by a foreign court or jurisconsult of a foreign law can have any other force than *55 that derived irom its reason and justice. This will always he admitted .and fully appreciated, although it cannot be recognized as having the binding force of authority. (7 Mon. R., 70; Ewing v. Smith, 3 Dess. R., 459; Hard. R., 301; Reid v. Lamar, 1 Strob. Eq. R., 39.)
We proceed to inquire into the legislative will as dedueiblc from the terms emjdoyed to express their intention, and the question, as it arises on the words, is simply whether the section can embrace any class of absentees except those whose return to the Republic is physically possible; or, in other words, whether it can, in the ordinary acceptation of the terms employed, be extended so as to include debtors whose return is physically impossible, for the reason that they had never been previously within our territorial limits, and consequently had never departed therefrom. Were this an original question, a ras integra, it would seem very improbable that any interpretation could depart so widely from the usual signification of the language as either to disregard totally the force and effect of the word return or to make returning to a* place and coming to it for the first time equivalent expressions. It is most obvious that foreigners residing abroad and coming into the State for tlie first time are not the class included within the letter of the statute. In its terms reference is made only to persons without the territorial limits being subjected to action on their return. How, although a foreigner who lias always ■resided out of the country may he truly described as being without its limits, yet it cannot he predicated of him, if he .afterwards come to the country, that he has returned, at least as long as terms have the meaning imparted to them by the common consent of those who employ them as a medium for the communication of ideas.
The words “after his or her return to the Republic ” are certainly not identical with the phrase “after his or their emigration or removal to the Republic.” They were framed doubtless to convey a different impression to the mind, and they answer that purpose very effectually; and if they he not equivalent or identical, it is beyond the power of courts of justice to make them so, or to include any other persons within the exception than such as are •embraced within its plain meaning and literal expression. (3 Johns. Ch. R., 146; Angell on Lim., chap. 2, sec. 12, p. 532.) It is a formulary not to bo •questioned that unless persons are under the disabilities expressly mentioned ■ in the statute, they cannot be exempted from its operation by judicial construction. (Angell on Lim., 532; 17 Ves. R., 38.) That the defendant or a foreigner is not embraced within the exception will appear in a very striking manner by contrasting the two averments of the amended petition, in one it is •declared that the defendant was out of the country at the accrual of the cause of action, and did not return before tlie 1st of January, 1845; and in the ■other that he never was in the country bcfoi’e the 1st day of January, 1845. Do these allege the same facts? Do they convey the same impression to the mind? Would not the construction that these statements are equivalent in their meaning he entirely arbitrary and capricious? Yet, unless they mean the same tiling and are descriptive of identically the same facts, the defendant ■ cannot bo brought within the operation of the exception. The first averment states precisely the facts which form the ground of the exception provided for by the statute; the second alleges a different state of facts. The latter are therefore not within the exception, and the defendant must necessarily be ■entitled to the benefit of the bar afforded by the general limitation.
That the affirmative description of a class of persons embraced within an exception must necessarily exclude all not comprehended within its literal meaning will appear from the construction of the statute of James in relation ■to absent debtors. There was no exception against them in that statute, and •they had the full benefit of its limitations. The fact that an absent debtor could not be sued during bis absence or before he came to the country was not allowed, on any general principle of reasoning or of equity, to operate in •favor of the plaintiff*. The course of the statute was uninterrupted, whether *56 the defendant was within or without the realm, and at the expiration of six. years from the accrual of the cause of action the suit was barred. (17 Ves., 38; Angell, 532.)
It seems a wide departure from such rigid principles of construction to hold/ that an immigrating debtor should be included under words descriptive of returning absentee's, and to bring the former as well as the latter class within the range of the exception oil any general principles or supposed equities;, as, for instance, that neither of them until their arrival within the limits of the country was subject to the process of the courts. It must be recollected that when the enlarged construction contended for was originally given to the phrase “return to the realm,” or rather when it was deprived of all meaning, the courts manifested a decided repugnance to enforce the real objects of the-statute. The plea was considered discreditable, (1 Pet. R., 351,) and slight circumstances were seized upon to avoid its operation. In actions for torts the construction was always strict, but in those of assumpsit the provisions of the statute were almost entirely disregarded. The language was peremptory that the-action should be commenced six years after the accrual of the cause, and not after; and yet it was held that an allusion to the debt in conversation, accompanied with declarations that it would not be paid or that it was barred by the statute, would be sufficient to deprive the party of the protection of the statute-on which lie had meant and expressed his intention to rely. Such equitable construction amouuted to a virtual repeal of tiie statute, and it is not surprising that while the limitations in favor of the debtor were nearly abolished by judicial construction or presumptions, exceptions in favor of the creditor were enlarged, and that ail persons coming into the country should be included under a description applicable alone to those who had gone abroad and whose return to the territory might be predicated as a possible event.
But without considering further whether the judicial construction of similar-statutory provisions has been compatible with the terms and the plain and universal acceptation of the language, let us advert to other sections of this and other statutes, and ascertain whether such a construction would harmonize with the provisions and the general policy of the country as shadowed forth in its legislation. The thirteenth section of the statute declares that no-action shall be brought against any immigrant to the Bepublic to recover a. claim which was barred by the law of limitations of that country or State from which he emigrated, nor shall an action be brought to recover money from an immigrant who was released from its payment by the bankrupt or insolvent laws of the country or State from whence he emigrated. Thdse provisions are not to be found in the laws of any other country. In other States the, law of limitation of the forum is alone regarded. If, for instance, a creditor and debtor, or either, were to remain in Texas for fifty years and the debt be barred a dozen times, yet, if they afterwards emigrate to England, the creditor would have six years to institute his suit, according to the doctrines-laid down in 3 Wilson R., 145.
The intention of the Legislature to treat the immigrant debtor with marked-favor is manifest by offering him the benefit of legal defenses not recognized-by the laws of oilier nations. But in addition to this section, the supplement to the act of limitation exhibits very strikingly the intention of the Legislature to favor, or rather treat the immigrating debtor with justice, and to subject, beyond all misapprehension or construction, foreign claims to the bar of the limitations of the statute. The supplement is expressed in tile following terms: “That, to prevent difficulty in the construction of the act of limitations passed at this session of Congress, it is hereby declared that the said act applies no less to foreign than to domestic claims.” It cannot reasonably be supposed that the Congress intended to assert a principle of international law universally recognized, that the limitation upon actions depends upon the law of' tiie country in which the suits arc prosecuted, and not the law of the place ■ *57 where the contract is made. Our laws had, for the first time, so far as-1 am informed, made an exception to the principle. But this was in favor of tlie foreign debtor. It threw around him a shield which he could not use in other States ; and the adoption of the thirteenth section is proof that the general principle was known to the Legislative body ; that they were aware they were introducing a new rule, which was intended to be used only where the period of a foreign limitation was shorter than that prescribed "by our own statute, and could not have been intended to weaken in other respects the force of the general rule that the domestic statute must fix the periods for the limitation of suits. It was totally unnecessary for the Legislature to have the adopted' tlie supplement if it were intended as a mere assertion of the general rule. A further object must have been contemplated, and tlie only rational purpose to-be effected by the supplement would be to subject a foreign claim to the operation of tlie statute to the same extent and in the same manner and degree that it would operate upon a domestic claim. As the Legislature had foreign claims under especial consideration, they certainly, if it had been so intended, would have declared in express terms that the statute should not commence running-until the debtor removed to the country., The provision was in his favor, and if it had been intended to be neutralized, some such intimation would doubtless have been given in explicit terms, and the debtor would then have selected the alternative whether to remain in his own country for perhaps a few months, until tlie foreign statute had run in his favor, or to enter the Republic and be harassed with litigation for years under circumstances of every advantage to the creditor and none to tlie debtor. The letter and spirit of the provisions to which we have referred repel tlie presumption that the Legislature would intentionally have subjected aforeign immigrant to the exception of the twenty-second section, as the act would have been repugnant to the general purpose of favoring the immigrating debtor and of subjecting domestic and foreign claims to the operation of the same bar. The provisions of the statute show unequivocally that its object was to produce repose and repress litigation. This would not be attained by the construction which is urged. Under this exposition the courts would be crowded with suits on stale demands, and results be produced not countenanced by the letter of the exceptions, by the spirit of other portions of tlie same statute, by the supplementary act, or by the general legislation of the country.
But it is said it would be inequitable to apply the exception to our own citizens absenting themselves temporarily and not also to foreign immigrants, who could not be sued until their arrival in the eonntry. The apparent justice or injustice of the law is not the question to be determined. It is the duty of the court to inquire what is the law, and to adjudge according to its rules and principles. If foreign immigrants be not included in tlie terms of the exception, they cannot be subjected to its operation: (3 Johns. Ch. R., 146.) Nor is the restriction of tlie section to residents departing from tlie Republic to-foreign countries and returning again at all incompatible with the scope of our laws from the first settlement of the country to the present day. Immigrants were invited by the strongest inducements, and absenteeism and abandonment of the eonntry punished by heavy penalties. Under the colonization laws settlers abandoning the country forfeited the lands granted under those laws. In the acts of the consultation and by the Constitution tlie penalty of flight was forfeiture of lands. And under the land laws of the Republic a claimant entitled to a lieadright for a league and labor under the Constitution, and who-had perhaps shared all the perils of the Revolution, lost his claim if he did not remain in the country until the time of application for his certificate; and if before application he absented himself from the country under circumstances that showed a change of domicile, lie would be deprived of his right, although he afterwards returned. Suits on foreign judgments for a money demand were prohibited in the bankrupt act, and when the courts were opened -on sucli suits, those of four years’ standing were barred unless sued on in sixty- *58 days from the passage of the act, &e., without any exception operating against defendants in any case whatever, except that at the election of the creditor the original cause of action might be sued subject to prescription. (Stat. June 28, 1845.) jSTow, it will hardly be contended that although the judgment was prescribed in sixty days, whether tlie defendant were in or out of the Republic, yet against the original cause of action the statute would not commence running until the coming of the defendant into the Republic. Tlie whole spirit of legislation in regard to foreign immigrants forbids the supposition that the Legislature would, with deliberate design, expose them to stale and harassing ■claims, following them from the conn tries of their former domicile for any period longer than would protect resident citizen.
We have been referred to a judicial construction of the word “absence” to be found in Buchannan v. Rucker, (9 East, 192, 194; Story Con. Laws, sec. 547.) A judgment had been obtained in the island of Tobago against a party stated to be. “formerly of the city of Dunkirk, now of the city of Loudon, merchant.” He was cited by a summons which had been served by posting up a “copy of the declaration at tlie court-house door,” and failing to appear, judgment had been entered against him as in default. The judgment was attempted to be maintained on'tlie ground that it was authorized by tlie local laws in cases of persons absent from the island. Lord Ellenborough, in delivering the judgment of the court, said: “By persons absent from the island must necessarily be understood persons who have been present and within the inrisdietion, so as to he subject to the process of the court; but it can never be applied to a person who, for aught that appears, never was present within or subject to the jurisdiction. ‘Absent f rom the island’must be taken only to ■apply to persons who had been present (here and were subject to the jurisdiction of tlie court out of which the process issued.” Had such accuracy of definition been applied to tlie terms of the statutes of limitations, the ■tlie word “absence” could never have been applied to persons who had never been within the limits of tlie country, and certainly the word “return” could never have been enlarged so as to comprehend as well those who were coming into a territory for the first time as those who had departed thence and were returing again to tlie places of their residence.
Judgment affirmed.