### KING v. SCOTT et al.    (No. 1649.)

(Court of Civil Appeals of Texas.    El Paso.
Jan. 29, 1925.)

1. **Adverse possession** ⟨⟩85(3)—**Evidence held to show hostile adverse possession by defendant, entitling him to judgment under plea of 10 years' limitation.**

Evidence *held* to show hostile adverse possession by defendant of land inclosed by fence, entitling him to judgment under plea of 10 years' limitation.

2. **Limitation of actions** ⟨⟩87(3) — **Statute suspending limitation as to absence from state held not applicable to nonresident from time of accrual of cause of action.**

Rev. St. art. 5702, providing that temporary absence of a person from state shall not be accounted or taken as a part of the time limited within which to bring an action, *held* not applicable to a nonresident defendant, who

was such at time of accrual of cause of action and always remained such.

3. **Adverse possession** ⟨⟩27—**Evidence held to show tracts of land in possession of defendant were segregated and inclosed by fence, within statute.**

Evidence *held* to show tracts of land in possession of defendant were segregated and inclosed by fence, within Rev. St. arts. 5677, 5678.

Appeal from District Court, Shackelford County; W. R. Ely, Judge.

Action by Mrs. Virginia A. King against James S. Scott and another. From the judgment, plaintiff appeals. Affirmed.

D. M. Oldham, Jr., of Abilene, and A. A. Clarke, of Albany, for appellant.

Andrews & Andrews, of Stamford, for appellees.

WALTHALL, J. Appellant, Mrs. Virginia A. King, brought this suit, in trespass to try title, against the appellee, James S. Scott, and W. R. Davis, to recover some 381 acres of land, alleging same to be fractional parts of sections 210, 216, 217, and 218, in block No. 1 in Shackelford county, Tex. The case was dismissed as to W. R. Davis.

James S. Scott answered by general demurrer, general denial, plea of not guilty, and pleaded title under the statute of limitation of 10 years.

Mrs. King by supplemental petition, pleaded general denial, and specially pleaded that Scott's pleas of limitation were not valid for the reason that Scott had been a nonresident of the state at all times since his cause of action had accrued, and also that the lands to which Scott claimed title by adverse possession were parts of 5,000 acres or more of lands owned or claimed by Scott, inclosed by a fence in connection therewith, or adjoining thereto, and negatived the facts that said lands were segregated and separated by a substantial fence from said lands connected therewith or thereto adjoining, and that one-tenth thereof had not been cultivated and used for agricultural or manufacturing purposes, as provided by articles 5677 and 5678, R. S.

Mrs. King and Scott, through their attorneys, entered into a written agreement, and filed the same as a part of the record of the case, the principal features of which are that Virginia A. King owns the record title to surveys 210, 216, 217, and 218 of the lands involved in the controversy, except as the same may be defeated by limitation title held by defendant Scott, and that defendant Scott owns the record title to surveys 209 and 203 of said lands, and that the only issues in this case being the questions of boundary as to the true location of said

surveys, and the question of limitation as pleaded by defendant Scott.

The case was tried without a jury. The trial court made and filed findings of fact and conclusions of law, and entered judgment for defendant, appellee here.

The following diagram showing the locations of the lands in controversy with reference to each other, with a brief explanation, will serve to explain the points at issue and discussed.

The numbers of the surveys shown on the diagram represent surveys each supposed to contain some 640 acres of land. The line drawn through the sections in the southwest corner of the diagram represents the railroad referred to in the evidence and trial court's findings. The heavy lines drawn around sections 209, 203, and 202 are not intended necessarily to be on or follow the lines of the inclosed surveys, but the lines are intended to show the inclosed lands referred to in the trial court's findings, as embracing 1,060 acres of land, and referred to as the Jog pasture, and to show generally the location of the inclosed sections with reference to the lands admitted to be owned by appellant and appellee, and to show the location of the 1,060 acres of inclosed lands with reference to the inclosed lands of appellee embracing more than 5,000 acres, the

southwest corner of which large acreage is the southwest corner of section 193, and is situated east of the west boundary line of said section extended north, and north of the south boundary line of section 193 extended east, and referred to by appellant in some of her propositions.

Appellant in her propositions does not contend that the trial court's findings of fact are not supported by the evidence. The findings of fact and conclusions of law made by the trial court are as follows:

"I. The court finds that the land in controversy in this cause was originally located by William Armstrong in 1866, and was a part of Block No. 1 E. T. R. R. Co. lands in Shackelford County, and that said William Armstrong marked on the ground by substantial corners the southwest corner Survey No. 1 in said Block, and that said William Armstrong also made substantial corners on the ground for the southeast corner of Survey No. 142, the southeast corner of survey No. 141 and the southeast and northeast corners of No. 140, all of which corners are now fully identified as the original corners made by William Armstrong in the original location.

"II. That on a line projected north from the southeast corner of survey 142 three other original Armstrong corners were fully identified, being the southeast corner of survey No. 141, southeast corner of survey No. 140 and the northeast corner of survey No. 140.

"III. That to project a line west from the southeast corner of survey 142 allowing 1900.8 varas to each section, the west line of survey No. 209 would be placed west of the fence now separating the property of the plaintiff and defendant.

"IV. That in 1883 the Monroe Cattle Company enclosed the land in controversy with other lands in a large pasture.

"That in 1900 the Texas Central Railroad was constructed, and erected its fence along its right of way segregating the land in question from other lands enclosed in the Monroe Cattle Company pasture.

"V. That July 2, 1901, the defendant, J. S. Scott purchased from the Monroe Cattle Company, with other lands, sections Nos. 209, 203, and 202, E. T. R. R. Co. lands in Shackelford County, and took actual possession of the tract of land embraced in the enclosure containing 1060 acres, including the land in controversy.

"VI. That there are no other original Armstrong corners found on the ground on a line projected west from the southeast corner of survey 142 and the west line of 209 as located by measurement of 1900.8 varas each section.

"VII. That the defendant, J. S. Scott, has continuously, since his purchase from the Monroe Cattle Company, been in the actual, peaceable, adverse possession, use and enjoyment of said 1060 acre tract, including the land in controversy enclosed by a substantial fence, for a period of more than ten years before the filing of this suit.

"VIII. That the lands embraced in the enclosure including the land in controversy contain 1060 acres, and that the same is enclosed by a substantial four wire fence, and has been so enclosed continuously since 1900 to 1917, that said enclosure embracing the lands

in controversy is under a substantial enclosure and maintained by the defendant, J. S. Scott, for a period of more than ten years before the filing of this suit.

"IX. That said fence consists of a substantial four barbed-wire and post fence on the south line of said enclosure, and a four barbed-wire and post fence on the west line of said enclosure and a four barbed-wire and post fence for the right of way of the Texas Central Railroad on the other side of said enclosure, said enclosure having only three sides."

### Conclusions of Law.

"I. The court concludes that as a matter of law the western boundary line of survey No. 209 is located west of the fence separating plaintiff's and defendant's properties.

"II. That the defendant's more than ten years adverse possession of the property in controversy and described in plaintiff's petition matures defendant's title by limitation under defendant's plea of limitation, and defendant is held to have full title precluding all claims."

### Opinion.

[1] Appellant, by several propositions, questions the application of the statute of limitation of 10 years. The first and fifth propositions for the reason that the appellee has not claimed the land in controversy in his own right, actual and adverse to plaintiff, but has been holding the same tentatively, and subject to inquiry and agreement, only, as to where the true boundary line might be, and disclaiming any title to lands actually owned by appellant, Mrs. King. Appellee holds the legal title to sections 209, 203, and 202, claimed by appellant to be in conflict on the west and south with her sections 210, 216, 217, and 218. The record shows, and the trial court found, that in 1883 the Monroe Cattle Company inclosed by a substantial fence the three sections now owned by appellee with other lands; that in 1901 appellee purchased from the Monroe Cattle Company the said three sections of land, thus inclosed, and took actual possession thereof, the land inclosed containing 1,060 acres. In 1900 the Texas Central Railroad erected its fence along its right of way through said three sections, thus dividing the three sections as indicated by the diagram. The 1,060 acres of land referred to in the evidence as the Jog pasture have been continuously inclosed by a substantial fence since 1901, owned and maintained by appellee in connection with the railroad right of way fence, and used as a pasture for grazing cattle. Appellant's contention is that appellee's inclosure of said three sections conflicts with and incloses 381 acres, and being parts of her sections 210, 217, 218, and 219.

This suit was filed in 1921. The record does not show that appellee's possession of the lands inclosed was interrupted by any adverse suit to recover any part of the lands in controversy. Without quoting the evidence in its entirety, it shows that appellee, by his lessees, has actually occupied and used for grazing stock the 1,060 acres, inclosed by a substantial fence, since July, 1901. Appellee testified:

"I have claimed the land that was inclosed in that inclosure during these years. I did not have any doubt but that I had a perfect right to claim it. My title to the land in the Jog pasture was never questioned, so far as I know, until this suit was filed, or until I was summoned to appear here. That was the first I knew about it."

Appellee, in answer to several questions, testified he had never claimed any of appellant's land, but did "claim the land in his deed; the land under fence." The evidence sufficiently shows that appellee claimed as his own, and adversely to appellant and the world, the land inclosed in the Jog pasture, the 1,060 acres. As we read the record, there is not "a single lisp of acknowledgment" by appellee that he makes no claim of ownership in himself to the land inclosed in his pasture. The evidence is equally clear that there was no controversy over any of the lands in question until 1913, some 20 years after the lands had been fenced and used as a pasture for grazing stock. His claim was not a mere mental process, as in Titel v. Garland, 99 Tex. 201, 87 S. W. 1152, to which we are referred, but an actual, visible taking possession of under his deed, inclosing by a fence, and using as a pasture for the grazing of stock, external circumstances disclosing an inward intention to claim the lands inclosed. There is nothing in the record to show that the claim of right under which appellee entered upon his possession was a permissive possession, as contended by appellant. In the Carr v. Bordner Case (Tex. Civ. App.) 219 S. W. 282, to which we are referred, the controversy arose within the prescriptive period, the parties there agreeing to abide by a survey to be thereafter made, it was held that the agreement and the result of the survey stopped the hostile character of the possession, and the possession thereafter was permissive and not hostile. There is no evidence in the record tending to show, as in the Carr v. Bordner Case, a boundary line between the lands in controversy established by agreement. Weiss v. Goodhue, 46 Tex. Civ. App. 142, 102 S. W. 793; Jayne v. Hanna (Tex. Civ. App.) 51 S. W. 296; Daughtrey v. New York & Tex. Land Co. (Tex. Civ. App.) 61 S. W. 947.

[2] Appellant by the second proposition, suggests that appellee being without the limits of the state at the time the cause of action accrued, the time of his absence shall not be taken as part of the time of the prescriptive period. Appellee took possession of the lands in question at the time of his purchase in 1901, the deed reciting his residence at that time to be in the state of Mis-

souri. Appellant's answer to appellee's plea of limitation recites that appellee's plea of limitation is not valid, for the reason that he has been absent from the state of Texas, and is a nonresident thereof, at practically all times since his cause of action accrued. Appellee leased the land in question to other cattle raisers, but he in person never lived or resided upon said lands, nor did he in fact ever reside in this state so far as the record shows. The evidence, we think, tends to show appellee's nonresidence at all times. It does show that he at times would come within the state and buy cattle and ship them out. Appellant refers us to article 5702, R. S. The article provides that the time of temporary absence from the state, at the time of the accruing of a cause of action, and at any time during which same might have been maintained, the action may be brought after the return of such person to the state, and the time of such absence shall not be accounted or taken as a part of the time limited. We think the article has no application where, as here, the pleading and the evidence without controversy show the absentee is a nonresident of the state, and was at the time of the accrual of the cause of action, and has always been a nonresident.

In Lynch v. Ortleib & Co., 87 Tex. 590, 30 S. W. 545, after discussing Snoddy v. Cage, 5 Tex. 106, Love v. Doak, 5 Tex. 343, and Moore v. Hendrick, 8 Tex. 253, Chief Justice Gaines held, in effect, that limitation runs in favor of a nonresident defendant who shall remain without the state until the period of limitation has been completed. To the same effect is Wilson v. Daggett, 88 Tex. 375, 31 S. W. 618, 53 Am. St. Rep. 766; and Huff v. Crawford et al., 88 Tex. 368, 30 S. W. 546, 31 S. W. 614, 53 Am. St. Rep. 763. In Watts et al. v. McCloud et al. (Tex. Civ. App.) 205 S. W. 381, in which a writ of error was refused, Judge Boyce of the Amarillo Court of Civil Appeals, construing article 5702, and in which the issue of fact was tendered as to whether W. W. Watts, the husband and father of appellants, and under whom appellants claimed the land on a plea of limitation, was, at the time of the accrual of the cause of action, a resident of this state, and thereafter was without the

limits of the state from time to time, held that, if W. W. Watts was a resident of the state at the time of the accrual of the cause of action, absences from the state thereafter would suspend the statute during the continuance of such absences; and on the other hand, if he were a nonresident of the state at the time of the accrual of the cause of action, mere visits to the state on business or pleasure would not bring the suspensitory statute into operation. The proposition is overruled.

[3] In addition to the 1,060 ares of land of which sections 209, 203, and 202 are alleged to be in conflict with appellant's lands described, appellee owns and has inclosed more than 5,000 acres of land, and appellant insists the appellee's plea of limitation is not available, for the reason that the lands in controversy are contiguous to and adjoining said large acreage, and has not been segregated and separated from said large acreage by a substantial fence; and for the reason that the lands in controversy form parts and parcels of said large acreage in connection therewith, and is not separated by a substantial fence, and invokes the provisions of article 5678, Revised Statutes. We think we need not, under the facts of this case, go into an extensive discussion of the above article. The 1,060 acres is a pasture to itself, segregated and separate from the large acreage by a substantial fence, its nearest point being two miles distant from the large acreage, the large acreage itself being inclosed to itself by a substantial fence. Appellee, by his lessees, is and during the prescriptive period has been in actual possession of both pastures, the land in controversy being inclosed in the smaller pasture.

Propositions are put forward announcing the matters to be observed in determining the true location on the ground of the surveys in controversy, but having concluded, as did the trial court, that appellee has title to the lands in controversy, under the statute of limitation of 10 years, a consideration of the propositions is unnecessary.

Finding no reversible error, the case is affirmed.

HIGGINS, J., did not participate in the decision of this case.