# Supreme Court of Texas

No. 21-0513

Sibel Onasis Ferrer,

*Petitioner*,

v.

Madalena Elizabeth Almanza, Isabella P. Almanza, and

Albert Boone Almanza,

*Respondents*

On Petition for Review from the
Court of Appeals for the Seventh District of Texas

JUSTICE BUSBY, dissenting.

Discussions of statutory interpretation can seem frothy and academic, with law review articles, books, and panels by the dozen exploring the latest twist or seeking to create a new trend. But the subject of how courts should interpret statutes also has a very real effect on who exercises government power and which parties prevail in particular disputes. Not only is the choice of one interpretive method over another vitally important to the separation of legislative from judicial power, it alters the outcome of actual cases like this one. Specifically, this case illustrates the difference between Judge Guido

Calabresi's pragmatic common-law approach, which empowers courts to declare statutes they view as out of step with the contemporary legal landscape void for obsolescence, and Justice Antonin Scalia's formal textualist approach, which adheres to the ordinary meaning of the words enacted and leaves statutory updating to the legislative branch.[1]

Observers of this Court's jurisprudence can be forgiven for believing that we long ago chose the latter approach. After all, our cases are rife with statements like

- "when we stray from the plain language of a statute, we risk encroaching on the Legislature's function to decide what the law should be,"[2]

- "it is not for courts to decide if legislative enactments are wise or if particular provisions of statutes could be more effectively worded to reach what courts or litigants might believe to be better or more equitable results,"[3] and

- "[t]he Constitution . . . entrusts to [the legislative branch], not the courts, the responsibility to decide whether and how to modernize outdated statutes."[4]

---

[1] *See* GUIDO CALABRESI, A COMMON LAW FOR THE AGE OF STATUTES 2 (1982); ANTONIN SCALIA, A MATTER OF INTERPRETATION: FEDERAL COURTS AND THE LAW 9-12, 47 (Amy Gutmann ed., 1997); *see also* Cass R. Sunstein, *Justice Scalia's Democratic Formalism*, 107 YALE L.J. 529, 529-531 (1997).

[2] *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999).

[3] *In re Dep't of Fam. & Protective Servs.*, 273 S.W.3d 637, 645 (Tex. 2009).

[4] *In re Facebook, Inc.*, 625 S.W.3d 80, 101 (Tex. 2021).

Using this approach, the dictionary and our cases show that a statute tolling limitations for the period of a putative defendant's "absence" from the state refers to the defendant "not being where [she is] usually expected to be."[5]  In this ordinary sense, no one disputes that a Texas resident is absent while away attending college in another state.

Yet today, the Court concludes that following the plain meaning of the statutory text would be "unwise."[6]  Instead, the Court looks to what opinions have said about the statute's supposed object[7] and a survey of how the judge-made federal law of personal jurisdiction—a topic this statute does not address—has evolved over the decades since the statute was enacted.[8]  Based on this evolution, the Court declares that "absence from this state" now means not "subject to personal jurisdiction and service" in the state.[9]

Most people who read this statute would never suspect that "absence" holds this hidden meaning.  Indeed, the Court's preferred meaning is contrary to another phrase in the statute, which provides tolling only during the absence "of a person against whom a cause of action may be maintained"—a category that includes only people over

---

[5] *Absence*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/absence (last visited April 19, 2023); *see also* Part I, *infra.*

[6] *Ante* at 14 n.5.

[7] *See ante* at 6 (citing *Ayres v. Henderson*, 9 Tex. 539, 541 (1853) (opining that "the object of the section was for the protection of domestic creditors"), and *Teal v. Ayres*, 9 Tex. 588, 593 (1853) (discussing what "the Legislature intended" in adopting the statute)).

[8] *Id.* at 7-11.

[9] *Id.* at 17-18.

whom a court would have jurisdiction. Under the Court's holding, then, tolling applies for the period that a person subject to jurisdiction (against whom a cause of action may be maintained) is not subject to jurisdiction (absent from the state). That makes no sense.

Moreover, none of the changes in law reviewed by the Court alter the ordinary meaning of "absence" for Texas residents like respondent Isabella Almanza. For example, the Court asserts that this case is controlled by our decision in *Ashley v. Hawkins*, 293 S.W.3d 175 (Tex. 2009), but in doing so it makes a critical interpretive error. *Ashley* undertook a commonplace statutory interpretation task: using one statute's designation of an in-state agent for serving a nonresident defendant to inform the meaning of "absence" in another statute tolling limitations. *Id.* at 177-79. But the Court overlooks that the first statute does not apply to Isabella, so it cannot affect when she is absent from the state according to the second statute. The Court attempts to bridge this gap with its catalog of judicial changes in the law of personal jurisdiction and service, but those changes likewise cannot support the Court's holding because they too apply only to nonresidents.

Perhaps most troubling of all, the Court's position that "absence" means not "subject to jurisdiction and amenable to service" essentially repeals the tolling statute altogether. If a defendant cannot be sued at all due to lack of personal jurisdiction, no court will ever be called upon to decide whether statutory tolling would apply to a limitations defense raised by that defendant. And defendants who are subject to jurisdiction are always amenable to some form of service: our statutes and rules allow for substituted service on non-residents as well as alternative

4

methods of serving residents who are absent from the state or unable to be found.  Thus, under the Court's interpretation, no defendant against whom a cause of action may be maintained will ever be absent, and the tolling statute will never apply.

Because the Court's holding departs from the ordinary meaning of the enacted text and renders the statute a nullity, I respectfully dissent.

## I

The tolling statute at issue, entitled "Temporary Absence From State," provides:

> The absence from this state of a person against whom a cause of action may be maintained suspends the running of the applicable statute of limitations for the period of the person's absence.

TEX. CIV. PRAC. & REM. CODE § 16.063.[10]  The question before us is whether a Texas resident defendant who was involved in a car crash in Texas is "absen[t] from this state" while away temporarily attending college in another state, thus extending the statute of limitations to sue her for the crash.  I would answer yes and therefore reverse.

According to our precedent, the correct place to find the answer is in the common, ordinary meaning of "absence from this state."  *See Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019).  "Absence" is the "state of being at a distance in place" that "primarily supposes a

---

[10] When a potential defendant is out of state, this statute allows the plaintiff additional time to gather information about the correct parties to sue, as well as time to locate and serve those parties personally or, if they cannot be located, to pursue alternative service methods.

prior presence,"[11] the "fact of not being where you are usually expected to be,"[12] or, in a legal sense, the "condition of being away from one's usual place of residence."[13]  Furthermore, the statute's reference to tolling "for *the period of* the person's absence" suggests a finite period of physical absence, as does the title of the statute: "*Temporary* Absence From State."  TEX. CIV. PRAC. & REM. CODE § 16.063 (emphases added).  Because a Texas resident is usually expected to be in Texas, her time away temporarily in another state is an absence in this ordinary sense.  That should be the end of this case.

It is worth noting, however, that this common, ordinary meaning of "absence" as being away from a place where one could be expected is also consistent with our historical understanding of the tolling statute beginning shortly after its original passage by the Congress of the Republic of Texas in 1841.  We have held that its text extends limitations only for claims against residents or nonresidents who were actually present in Texas at an earlier time, including debtors who may have fled

---

[11]    *Absence*,   WEBSTER'S   DICTIONARY   1828,   https:// webstersdictionary1828.com/Dictionary/absence (last visited Mar. 21, 2023).

[12]    *Absence*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge. org/us/dictionary/english/absence (last visited Apr. 19, 2023); *see also Absence*, MERRIAM-WEBSTER,     https://www.merriam-webster.com/dictionary/absence (last visited Apr. 19, 2023) ("a failure to be present at a usual or expected place").

[13] *Absence*, BLACK'S LAW DICTIONARY 8 (Bryan A. Garner ed., 11th ed. 2019); *see also Absence*, NEW OXFORD AMERICAN DICTIONARY 6 (3d ed. 2010) ("the state of being away from a place or person").  The commonly understood meaning of a legal reference to an absent *defendant* has long been that it "does not embrace non-resident defendants but has reference to parties resident in the state, but temporarily absent therefrom."  *Absent*, JOHN BOUVIER, BOUVIER'S LAW DICTIONARY 92 (Francis Rawle ed., 8th ed. 1914).

6

the state—whether temporarily or permanently—to escape liability. *See Ayres v. Henderson*, 9 Tex. 539, 541 (1853); *Snoddy v. Cage*, 5 Tex. 106, 109, 116 (1849); *see also Stone v. Phillips*, 176 S.W.2d 932, 934 (Tex. 1944). Conversely, the statute denies tolling for claims against nonresidents who later immigrate to Texas, thus preserving debtors' limitations defenses against out-of-state creditors who might try to collect by following them. *Snoddy*, 5 Tex. at 111-12.

In sum, as we explained only eight years after the statute's enactment, the term "absence" refers to "persons who have been present," and it "could never have been applied to persons who had never been within the limits of the country." *Id.* at 115-16; *see also Phillips v. Holman*, 26 Tex. 276, 281-82 (1862); *Fisher v. Phelps, Dodge & Co.*, 21 Tex. 551, 560 (1858). We have also recognized this ordinary meaning of "absence" in more recent cases addressing other statutes. Less than twenty years ago, we held that "an 'absence' requires a prior presence" when interpreting a provision of the Tort Claims Act governing immunity for claims based on the absence of a traffic signal. *City of Grapevine v. Sipes*, 195 S.W.3d 689, 695 (Tex. 2006) (interpreting TEX. CIV. PRAC. & REM. CODE § 101.060(a)(2)).

As discussed in Part II below, we have identified an additional reason why certain nonresident defendants are not "absent" for tolling purposes even if they were previously in the state: the Legislature later passed long-arm statutes appointing agents for them in the state, so they are legally present through those agents. But these agency statutes do not apply to Texas residents like respondent, so they cannot affect the "absence" analysis for residents.

7

Because our cases confirm that "absence" means not being in a place where one has been or normally would be present, respondent Isabella Almanza was "absent" from the state temporarily while attending college, and the tolling statute applies. Absent a substantive change to the statute, what we said in 1858 should remain true in 2023: "[w]hether there should be such change in our law as not to allow mere temporary departures to suspend the statute, must be left to the wisdom of the legislature." *Fisher*, 21 Tex. at 560.

The Court notes that the current version of the tolling statute was the product of a non-substantive recodification in 1985 that modernized its language.[14] A comparison of the text before and after the recodification confirms that none of the changes altered the meaning of the term "absence," which appears in both versions. Following the statute's original enactment in 1841, few changes were made to it until the recodification. The original statute provided:

> If any person against whom there is or shall be cause of action, is or shall be without the limits of this republic at the time of the accruing of such action, or at any time during which the same might have been maintained, then the person entitled to such action shall be at liberty to bring the same against such person or persons after his or their return to the republic: and the time of such persons' absence shall not be accounted, or taken as a part of the time limited by this act.[15]

---

[14] Acts 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3257 (codified at TEX. CIV. PRAC. & REM. CODE § 16.063).

[15] Act approved Feb. 5, 1841, 5th Cong., § 22, 1841 Tex. Gen. Laws 163, 170, *reprinted in* 2 H.P.N. Gammel, *The Laws of Texas 1822-1897*, at 634 (Austin, Gammel Book Co. 1898).

8

Far from simply deleting two phrases, as the Court suggests (*ante* at 16), the recodification changed "without the limits of" to "absence from," which provides a stronger sense of being away from one's usual place as discussed above. And although the recodification dropped an arguably superfluous statement that the plaintiff would be at liberty to bring an action after the putative defendant's "return," it retained the finite concept of a "time" or "period of absence" and changed the title of the section to "Temporary Absence From State."[16] These changes are compatible with our historical and plain-language understanding that "absence" means not being in a place where one could be expected.

## II

Rather than focusing on the text of the statute, the Court turns to judicial decisions interpreting the Due Process Clause of the Federal Constitution to illustrate the "revolutionary change in the law of personal jurisdiction and service" that occurred after the statute's enactment. *Ante* at 7. But the ordinary meaning of the term "absence" in section 16.063 does not involve personal jurisdiction and service for the reasons just explained. It is unclear why the Court believes the Legislature did not intend for the term "absence" to "keep [its] meaning fixed, regardless of what federal courts might eventually say about the due-process clause." *Tex. Dep't of State Health Servs. v. Crown Distrib.*

---

[16] As discussed further below, the recodification also changed the reference to the "time during which the [action] might have been maintained" to a requirement that the defendant be "a person against whom a cause of action may be maintained." *Compare supra* n.15 *with* Acts 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3257 (codified at TEX. CIV. PRAC. & REM. CODE § 16.063).

*LLC*, 647 S.W.3d 648, 675 (Tex. 2022) (Young, J., concurring). I see nothing in the statute to suggest that "Texas courts must resolutely interpret" the meaning of the term absence "to follow every federal fad." *Id.* at 675-76.

To the contrary, section 16.063 draws a distinction between a putative defendant's "absence" and whether "a cause of action may be maintained" against him or her, and it is the ordinary meaning of the latter phrase that encompasses concepts of personal jurisdiction and due process. Specifically, the statute makes tolling available during the "absence from this state of a person against whom a cause of action may be maintained." *Id.* An action cannot be maintained against a party over whom the court has no personal jurisdiction, whether due to lack of minimum contacts or lack of service. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924-25 (2011) (discussing when defendant has minimum contacts with state such that plaintiff "may maintain" suit there); *Wilson v. Dunn*, 800 S.W.2d 833, 836-37 (Tex. 1990) (holding jurisdiction to render judgment depends upon proper service). Thus, if anything, the revolutionary personal jurisdiction decisions the Court catalogs affect the meaning of the statutory phrase "a person against whom a cause of action may be maintained," not the meaning of "absence."[17]

---

[17] The Court responds that this phrase "merely identifies the person against whom suit is contemplated." *Ante* at 16 n.6. But the ability to "maintain" a cause of action means more than just whether the plaintiff has thought about filing suit, as shown by the *Goodyear Dunlop* decision cited above as well as our recent decision in *Brown v. City of Houston*. 660 S.W.3d 749, 752-53, 756-57 (Tex. 2023) (contrasting "maintain" an action with terms such as "file" or "initiate" or "commence" an action). Changes made to the

Moreover, if the Court were correct that "absence from this state" also connotes a lack of jurisdiction, the statute would provide that tolling applies for the period that a person subject to jurisdiction (against whom a cause of action may be maintained) is not subject to jurisdiction (absent from this state). Because that interpretation makes nonsense of the statute, it cannot be right.

The Court also suggests that there have been changes in the law of service that should affect when a defendant is considered absent under the tolling statute. But Texas service rules have not changed in any way that would alter the meaning of the statutory term "absence" in this case. In 1840, the Republic Congress authorized service on a defendant "not found at his or her residence" by leaving the process "at the residence of such person" with a family member over 14 years old.[18] In 1844, it authorized service on "a non-resident, within the limits of the Republic of Texas, . . . by publishing a notice in [a specified] newspaper . . . ."[19] And in 1846, the First Legislature passed a law providing that when it is alleged or appears that "any defendant is not an inhabitant of

---

statue also support reading "maintained" to mean more than "contemplated." As noted above, the statute originally referred to the "time during which the [action] might have been maintained." *Supra* n.15. But the Legislature later changed this reference into a requirement that the putative defendant be "a person against whom a cause of action may be maintained." TEX. CIV. PRAC. & REM. CODE § 16.063.

[18] Act approved Feb. 5, 1840, 4th Cong., § 2, 1840 Tex. Gen. Laws 88, 88, *reprinted in* 2 H.P.N. Gammel, *The Laws of Texas 1822-1897*, at 267 (Austin, Gammel Book Co. 1898).

[19] Act approved Feb. 3, 1844, 8th Cong., § 1, 1844 Tex. Gen. Laws 77, 77, *reprinted in* 2 H.P.N. Gammel, *The Laws of Texas 1822-1897*, at 989 (Austin, Gammel Book Co. 1898).

11

the State, that he is absent therefrom, or that he is a transient person," the clerk can authorize the plaintiff "to cite the defendant by making publication of the citation in [a specified] newspaper . . . ."[20]

This last law confirms that the Legislature understands the difference between being "absent" from the state (the term used in the tolling statute) and being a "nonresident" or non-"inhabitant" of the state—a distinction that our rules maintain to this day. *See* TEX. R. CIV. P. 108, 109. And taken together, these laws show that both absent residents and nonresidents have long been subject to alternative methods of service. But none of the Court's older tolling cases discussed above so much as hinted that the availability of these service methods somehow rendered defendants present for purposes of preventing tolling under the predecessor to section 16.063.

Similarly, the more recent tolling cases on which the Court relies today do not affect the meaning of "absence" for Texas residents; instead, they address whether nonresidents are constructively present in Texas under the tolling statute when they have agents in the state under the long-arm statutes. In *Vaughn v. Deitz*, we held limitations was tolled for car crash claims against defendants who later moved out of state even though an automobile-specific long-arm statute deemed that the nonresident defendants had appointed a Texas agent for service of process. 430 S.W.2d 487, 490 (Tex. 1968); *see* TEX. CIV. PRAC. & REM. CODE § 17.062. In dissent, then-Justice Pope argued that this

---

[20] Act approved May 13, 1846, 1st Leg., § 11, 1846 Tex. Gen. Laws 363, 366-67, *reprinted in* 2 H.P.N. Gammel, *The Laws of Texas 1822-1897*, at 1672-73 (Austin, Gammel Book Co. 1898).

substituted-service statute "fix[es] a defendant's constructive presence in Texas." *Vaughn*, 430 S.W.2d at 493 (Pope, J., dissenting). "The validity of such statutes is grounded upon the idea that such defendants are legally present through an agent; hence, are not really absent." *Id.* at 491.

We later agreed with Justice Pope and discarded *Vaughn* in two cases involving long-arm substituted-service statutes applicable only to nonresidents. In *Kerlin v. Sauceda*, we held that section 16.063 tolling did not apply to a claim against a nonresident who "was present by doing business in this state as the [general long-arm] statute defines that term." 263 S.W.3d 920, 928 (Tex. 2008). And in *Ashley v. Hawkins* (also a car crash case), we overruled *Vaughn* and held that "a defendant is 'present' in Texas, for purposes of the tolling statute, if he or she is amenable to [substituted] service under the general longarm statute," which "establishes a nonresident's presence in the state for purposes of personal jurisdiction." 293 S.W.3d at 178-79.

The defendants in these two cases were nonresidents when suit was filed, and the linchpin of our analysis in each was that these defendants' constructive presence was established by our long-arm statutes, which expressly apply only to nonresidents. *See, e.g.*, TEX. CIV. PRAC. & REM. CODE § 17.044(a)(1) (designating secretary of state as "an agent for service of process . . . on a nonresident who" engages in business in the state or meets certain other requirements). The reason the long-arm statutes were relevant to our tolling analysis was not that they made defendants amenable to personal jurisdiction (a concept not mentioned in the tolling statute), but that they established the legal

13

presence (non-"absence") of nonresident defendants by appointing an agent for them in the state.

In other words, *Ashley* and *Kerlin* used the in-state agency relationship created by the long-arm statutes to inform the meaning of "absence from the state" under the tolling statute. Understanding how choices made by the Legislature in one statute affect the meaning of a second statute is the everyday work of statutory interpretation, and I agree with the Court's opinions in those cases.

But this case is different in a fundamental way: there is no first statute applicable to Texas residents like Isabella that could inform the ordinary meaning of "absence" in the second (tolling) statute. The long-arm statutes have absolutely nothing to say about residents, all of whom are already subject to personal jurisdiction in Texas courts and to alternative methods of service—just as they have been since the tolling statute was first enacted over 180 years ago.

This gap reveals that the lead argument in the Court's analysis is misdirected. I agree with the Court that the *tolling* statute applies to both residents and nonresidents who were present in Texas at one time and later became "absent" from the state during the limitations period. *Ante* at 12. But the reason *Ashley* and *Kerlin* do not support the Court's position here is that the *long-arm* agency statutes we used to inform the meaning of "absent" in those cases apply only to defendants who are nonresidents when suit is filed.

In sum, nothing relevant has changed about what it means for a Texas resident to be "absen[t] from the state" under the tolling statute since we said in 1849 that absence bears its ordinary meaning, referring

14

to "persons who have been present." *Snoddy*, 5 Tex. at 115-16. None of the developments in the law of personal jurisdiction and service surveyed by the Court apply to residents. And because residents are not covered by our long-arm substituted-service statutes, they cannot be constructively present through an agent designated by those statutes.

For these reasons, I disagree with the Court that this case is simply an application of *Ashley*. *Ashley* held only that a nonresident defendant "is 'present' in Texas, for purposes of the tolling statute, if he or she is amenable to service under the general longarm statute . . . ." 293 S.W.3d at 179. Because Isabella is a Texas resident not amenable to service under the long-arm statutes, *Ashley* and our other decisions addressing the meaning of "absence" in light of the agency created by the long-arm statutes do not apply to her.

## III

Finally, construing "absence" in the tolling statute to mean not "subject to personal jurisdiction and amenable to service," as the Court does (*ante* at 17-18), renders section 16.063 a nullity. Tolling will never be relevant in cases where the defendant cannot be sued at all due to lack of personal jurisdiction, as no court will ever be called upon to decide whether statutory tolling would apply to a limitations defense raised by that defendant. And defendants who are subject to jurisdiction are always amenable to some form of service. As just explained, we have held that every nonresident defendant over whom a Texas court can exercise personal jurisdiction is "amenable to service" here because they are statutorily deemed to have appointed a Texas agent for substituted service of process. TEX. CIV. PRAC. & REM. CODE § 17.044(a)(1).

15

Likewise, every Texas resident is amenable to service even when absent from the state or unable to be found, as our rules allow for citation by (for example) certified mail, electronic means, personal service out of state, and publication. *See, e.g.*, TEX. R. CIV. P. 106(a)(2), (b)(2), 108, 109.

Thus, under the Court's holding, no defendant against whom a cause of action may be maintained will ever be absent and tolling will never apply.[21] That result is contrary to the canons against ineffectiveness, surplusage, and desuetude. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 63, 174, 336 (2012). Simply put, it is not our role to repeal section 16.063. *In re Facebook*, 625 S.W.3d at 101. Although we have recognized equitable tolling of limitations in certain contexts, the Legislature long ago intervened to set tolling policy by statute concerning "absence from this state." As we first explained over 160 years ago, the wisdom of repealing or amending the statute should be left to that branch. *Fisher*, 21 Tex. at 560.[22]

---

[21] The Court appears to concede as much, though it notes Isabella's argument regarding tolling for transient persons. *Ante* at 15. But Rule 109 provides for transient persons to be served by publication, so they are amenable to service and tolling would not apply under the approach adopted by the Court. *See* TEX. R. CIV. P. 109.

[22] The Court disagrees, concluding that repeal is warranted because following the plain language of the tolling statute would be "unwise." *Ante* at 14 n.5. In support, it observes that the tolling statute does not create a bright-line rule, and that implementing it would "undercut . . . the legislative determinations of what constitutes a reasonable amount of time in which to present a claim." *Id.* That is precisely what tolling statutes do, as the Legislature well knows. When the Legislature has chosen both to set a bright-line limitations period and to provide for tolling in certain cases, it is not for courts to conclude that the former choice is "better" and therefore override the latter. *Id.*

16

Though the Court does not do so here, courts in many states have rightly shied away from rendering their absence tolling statutes nugatory, instead adopting a narrow construction that allows tolling only where defendants cannot be located or serving them becomes a substantial burden. *E.g.*, *Medina v. Tate*, 438 S.W.3d 583, 597 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (Harvey Brown, J., dissenting) (collecting cases). That approach would certainly be preferable to negating the statute altogether, as the Court does.[23] But for the reasons I have explained, the more textually faithful approach is to hold that a defendant is absent when she is not in a place where she could be expected to be.

I would hold that respondent Isabella Almanza was absent under the plain meaning of that term as this Court has long understood it while she was living out of state temporarily to attend college, and therefore section 16.063 tolled the statute of limitations for the period of her absence. Because the Court instead holds section 16.063 inapplicable and affirms the summary judgment in her favor based on limitations, I respectfully dissent.

J. Brett Busby
Justice

**OPINION FILED:** April 28, 2023

---

[23] That approach would also address the Court's uncertainty concerns regarding the tolling rule chosen by the Legislature. *Ante* at 14 n.5.